UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:22-cv-81684-JIC

IONA LEWIS and JACLYN HEERY,
individually and on behalf of all others
similarly situated,

    Plaintiffs,

vs.

HOMESPIRE MORTGAGE
CORPORATION, a Maryland corporation,

    Defendant.
_____/

**AMENDED JOINT MOTION SEEKING *IN CAMERA* REVIEW AND APPROVAL OF FLSA-RELATED PORTIONS OF MEDIATED SETTLEMENT, DISMISSAL OF ACTION WITH PREJUDICE, AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs and Defendant (collectively "the Parties"), by and through their respective undersigned counsel, jointly move this Honorable Court for *in camera* review and approval of those FLSA-related portions of the Parties' mediated settlement and a dismissal with prejudice of the instant action. In support thereof, the parties state as follows:

1. On November 1, 2022, Plaintiff, Iona Lewis ("Lewis"), filed an initial three-count complaint (the "Complaint") seeking (1) recovery of unpaid overtime under the Fair Labor Standards Act ("FLSA"), (2) recovery of minimum wages under the FLSA, and (3) unpaid commissions under Florida common law. [DE 1].

2. On November 18, 2022, Plaintiff, Jaclyn Heery ("Heery") – who worked for Defendant in one of its branches *in Georgia*, filed a consent to join this action, and Lewis and Heery subsequently filed a four-count amended complaint (the "Amended Complaint") seeking certification of a *nationwide* class on two (2) counts. [DE 8]. Counts I and II allege nationwide

class violations of the FLSA's statutory minimum wages and maximum hours (overtime compensation) provisions. *Id*. at pp. 6-8. The remaining counts of the Amended Complaint are specific to Plaintiff, Lewis, and allege separate (and different) claims for minimum wages owed under the FLSA (Count III) and commissions owed pursuant to Florida common law (Count IV). *Id.* at pp. 8-9.

3. Importantly, this case is unique and does not involve typical garden-variety unpaid wage claims with which this Court is more than familiar. Rather, this case presents what the undersigned counsel believe is an issue of first impression in the Eleventh Circuit. The central crux of the case turns on the application of certain pay policies applicable to Plaintiffs and the FLSA's "free and clear" doctrine relating to the payment of minimum wages. As further described in Plaintiffs' motion for conditional certification, *see* ECF No. 27, Plaintiffs alleged Homespire required their express consent to the following pay policy:

> Conditional Income: Conditional minimal income (comprised of an advance of conditional income and earned commission) for the first three (3) months … (the amount paid over earned commission shall be referred to as the "Advance"). The Advance shall be deemed earned on the first anniversary of the start date of your employment provided you have remained a full-time employee of Homespire during the year. If you cease to be employed by the Company, for any reason, other than due to lay-off for a reduction in force, within the first year of employment, then the Advance shall be refunded to Homespire within three (3) business days. You agree that you will pay Homespire for the fees and costs, including reasonable attorney's fees, it incurs if legal action is necessary to recover the Advance from you. These terms shall survive and not be superseded any other contemporaneous agreement.

*Id.*

4. Defendant strenuously contested Plaintiffs' entire case and theory, claiming Plaintiffs' Amended Complaint and claim for conditional nationwide certification rests entirely upon one non-binding Sixth Circuit case reversing an order granting a motion to dismiss, *Stein v. hhgregg, Inc.*, where the court held a pay policy allowing the defendant to recoup monies that

*could be* interpreted by employees to include minimum wages violated the FLSA regardless of whether the defendant clawed back minimum wages or not. 873 F.3d 523, 536 (6th Cir. 2017). *See* ECF No. 41. Defendant's position was that the Sixth Circuit's novel interpretation of the FLSA in *hhgregg* was unfair because it was not based on any Department of Labor ("DOL") opinion letter, handbook, or even Congressional intent. Rather, it was Defendant's position that the decision rested on the Sixth Circuit's interpretation of the "free and clear" regulation and the fact that no DOL opinion letter or its Field Operations Handbook specifically permitted claw backs such as the CI Bonus, although the DOL did not specifically prohibit it either — the DOL simply did not address that specific issue. 873 F.3d at *535-36. Nonetheless, the *hhgregg* court ruled that the company violated the FLSA in including a claw back provision even though *hhgregg* never actually clawed back any minimum wages. This issue has not yet been addressed in this jurisdiction and it is Defendant's position that if this Court were to adopt that interpretation here then that would allow Plaintiffs to receive full minimum wages, *and* an award of minimum wages already received *and* liquidated damages.

5. Defendant also filed a motion to dismiss the nationwide class allegations altogether, a jurisdictionally based argument that added a level of sophistication and complexity to this case as it was in its infant stages. *See* ECF No. 21. Specifically, Defendant argued that Plaintiffs failed to meet their initial burden of alleging personal jurisdiction, but, even if they had, this Court lacked personal jurisdiction over claims asserted by or on behalf of non-Florida resident Plaintiffs since there was no personal or specific jurisdiction over those claims, which argument was based on a Supreme Court ruling, *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773 (2017). The Eleventh Circuit had not yet determined whether the ruling in *Bristol-Myers Squibb Co.* extended to the FLSA context as of the time Defendant filed its motion.

6. As such, Plaintiffs knew and understood they faced an uphill battle in this case, albeit they believed for a just and worthy cause. Defendant also was aware of the risk and potential exposure it faced in this case but defended against Plaintiffs' allegations all the way. Both counsel were zealous advocates for their respective clients.

7. Plaintiffs also knew and understood even if they prevailed, the potential recovery of liquidated damages certainly was not a given, as is typically the case in most garden-variety FLSA cases, adding to the risk.

8. In addition, prior to the filing of Plaintiffs' lawsuit, Defendant had pursued its own claims, and filed its own lawsuits, against most, if not all, Plaintiffs, asserting claims for repayment of alleged refund balances owed on the conditional income previously paid to Plaintiffs. Relatedly, certain Plaintiffs had resolved such claims with Defendant prior to opting-in to this action, involving the payment of varying monetary sums.

9. Since the Plaintiffs filed the Amended Complaint, an additional ten (10) individuals filed notices of consent to join this action.

10. The Parties have engaged in discovery, scheduled, and prepared for multiple depositions of key witnesses, and conferred via videoconference on multiple occasions to exchange and obtain informal information concerning Plaintiffs' claims and Defendant's defenses. Defendant's motion to dismiss and Plaintiffs' motion for conditional certification was fully briefed and pending as of the time the Parties settled.

11. Since the inception of this case, the Parties and their counsel informally explored potential resolution of not just the FLSA claims, but Defendant's alleged claims against the Plaintiffs, as part of a "global" resolution of all claims. For about the past month or so, the Parties and their counsel began making considerable progress on a potential resolution of this case and

continued negotiating in good faith through telephone, email, and video communication, culminating in last Friday's mediation conference with Mediator Cathleen Scott, Esq. After approximately nine (9) hours of mediation, the Parties were able to fully resolve this matter. ECF No. 52.[1]

12.     The Parties respectfully request this Honorable Court conduct an *in-camera* review of the settlement paperwork, or alternatively, schedule an in-person or Zoom hearing for purposes of approving those FLSA-related portions of the settlement for fairness under *Lynn's Food* because confidentiality is a material term of the settlement. Accordingly, the Parties have agreed to seek the Court's approval of the settlement by submitting it for *in camera* review to ensure the settlement remains confidential. The Parties respectfully request this Court to exercise its discretion in allowing the Parties to submit the settlement for *in camera* review because the interests advanced by the Parties in keeping the settlement confidential outweigh the need for public access for all the reasons discussed below in Subsection B in the Memorandum of Law. *See, e.g., Bartelloni v. DeCastro,* 2007 WL 2155646, * 1 (S.D. Fla. July 26, 2007) (courts "must weigh the interests in favor of openness—*i.e.,* judicial transparency—against the interest of the parties in keeping the matter secret").

13.     The settlement obligates Defendant to pay Plaintiffs the full amount of their alleged unpaid overtime and minimum wages, representing a **_100% uncompromised unliquidated recovery_**. In addition, the Plaintiffs' counsel separately allocated and negotiated the claim for reasonable attorney's fees and costs. While the Plaintiffs retained their counsel on a contingent fee basis, under the terms of the settlement, Plaintiffs will retain 100% of their settlement proceeds

---

[1]     As an aside, the Parties' counsel litigated this case with extreme civility and cooperation.

and Defendant will pay the Plaintiffs' counsel a separate amount for negotiated attorneys' fees and costs.

14. In addition, the agreement includes a full *mutual* general release, which, for the Plaintiffs, adds significant value to the settlement, separate and apart from any monetary terms, as there were actual, and not theoretical claims, at issue here (separate and apart from the FLSA claims).

15. In exchange for the settlement proceeds and these additional negotiated terms, Plaintiffs agreed to dismiss the claims brought in the Amended Complaint with prejudice. The Parties stipulate that they have a bona fide dispute and are resolving the matter to avoid the cost and time of litigating the issues and the risks associated with continued litigation. The Parties stipulate the settlement represents **full recovery** of all alleged unpaid wages due the Plaintiffs, unliquidated and **does not represent a compromise of Plaintiffs' unliquidated claims** for overtime and minimum wages compensation. Counsel for the Parties represent the settlement entered by the Parties was an arms-length compromise and there was no collusion regarding the settlement of this matter. Indeed, this was a mediated settlement.

16. Counsel for the Parties also represent the continuation of this litigation would necessitate further expense causing additional expenditures of costs and attorney's fees.

17. Counsel for the Parties agree, in their respective opinions, the settlement is fair and reasonable under the circumstances.

18. Counsel for the Parties agree and acknowledge the amount negotiated as attorney's fees and costs is reasonable and was negotiated separately from the amount that was agreed upon for Plaintiffs' underlying claims for minimum wage and overtime. The fees also include time spent litigating and negotiating the claims Homespire had asserted against Plaintiffs, culminating in the

mutual general release term of the settlement. Plaintiffs' counsel also negotiated a personal guaranty from Defendant's principal as an essential term of the settlement, as the payment of the settlement proceeds includes installment terms over the remainder of the calendar year.

19.     Given the complexity and uniqueness of the issues, the risks present for both sides, the total value and benefit obtained by the Plaintiffs, and the Parties' desire to achieve a global resolution of all potential claims that could have arisen out of the employment relationship between the Parties, including the resolution of the FLSA claims at issue here, the Parties believe the settlement is fair and reasonable under the circumstances and accordingly request this Court to approve their global settlement. The Parties respectfully request the Court review and approve the settlement as fair and reasonable, and stipulate to the dismissal of this action with prejudice. The Parties agree to the dismissal of this action with prejudice on the condition the Court retains jurisdiction solely to enforce the terms of the settlement agreement. *See Anago Franchising, Inc. v. Shaz, LLC,* 677 F.3d 1272, 1280 (11th Cir. 2012).

## MEMORANDUM OF LAW

**Standard of Review**

Judicial review and approval of portions of this settlement is necessary to give it final and binding effect. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982). As the Eleventh Circuit held in *Lynn's Food Stores*:

> [t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. . . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

*Id.* at 1352-53.

"Where the employer offers the plaintiff full compensation on his FLSA claim, no compromise is involved and judicial approval is not required." *Feagans v. Americana Jax Inv., Inc.*, 3:07-cv-433-J-33HTS, 2008 U.S. Dist. LEXIS 21974, 2008 WL 782488, at *1 (M.D. Fla. Mar. 20, 2008); *see also, Mackenzie v. Kindred Hosps. E., LLC.*, 276 F. Supp. 2d 1211, 1217 (M.D. Fla. 2003) ("Since the plaintiff has been offered full compensation on his claim, this case does not involve a compromise. There is no need for [*4] judicial scrutiny. . ..."). Even so, in an abundance of caution, the Parties are submitting the settlement even though there has been no compromise of the unliquidated amounts sought (albeit requesting the Court review same *in camera* or at a fairness hearing).

Before approving an FLSA settlement, the Court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1354-55. If the settlement reflects a reasonable compromise over issues in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354. In determining whether the settlement is fair and reasonable, the Court should consider the following factors:

(1) the existence of fraud or collusion behind the settlement:

(2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the probability of plaintiff's success on the merits;

(5) the range of possible recovery; and

(6) the opinions of the counsel.

See *Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592-Orl-22JGG, 2007 U.S. Dist. LEXIS 10287 at *2-3

(M.D. Fla. Jan. 8, 2007). S*ee also Hill v. Florida Indus. Elec., Inc.,* No. 6:06-cv-915-Orl-31JGG, 2007 U.S. Dist. LEXIS 9498 at *6 (M.D. Fla. Feb. 9, 2007); *Pacheco v. JHM Enter., Inc.,* No. 6:05-cv-1247-Orl-JGG, 2006 U.S. Dist. LEXIS 22066 at *4 (M.D. Fla. Apr. 12, 2006). The Court should be mindful of the strong presumption in favor of finding a fair settlement. *Hamilton*, 2007 U.S. Dist. LEXIS at *2-3. *See also Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977).

      A.      **All Relevant Criteria Support Final Approval of the Settlement.**

First, courts have found no fraud or collusion where both parties were represented by counsel and the amount paid to the plaintiff seemed fair. *See Helms v. Central Fla. Reg. Hosp.*, No. 6:05-cv-383-Orl-22JGG, 2006 U.S. Dist. LEXIS 92994, at *11-12 (M.D. Fla. Dec. 21, 2006). Here, the Parties were independently represented by counsel.

All counsel involved have extensive experience in litigating claims under the Fair Labor Standards Act, including collective action claims for unpaid overtime and minimum wages. Each counsel was obligated to and did vigorously advocate for their clients.

The complexity, expense, and length of future litigation also militate in favor of this settlement. If the Parties continued litigating this matter, they would be forced to engage in costly and protracted litigation to prove their claims and defenses.

However, to resolve the litigation, Defendant is paying Plaintiffs for their entire alleged unpaid overtime and minimum wages, unliquidated, which is a full and uncompromised recovery, plus additional non-wage compensatory damages to certain Plaintiffs, costs, and attorneys' fees, along with a negotiated full general release. This settlement, therefore, is a reasonable means for both parties to minimize future risks and litigation costs.

Third, there has been sufficient investigation and exchange of information to allow counsel and the Court to act intelligently in this matter. The Parties exchanged information and

documentation regarding Plaintiffs' hours and pay, including commissions, the scope of the potential class, and other related information. In agreeing upon the proposed settlement, the Parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion.

The last element the Court should evaluate in determining the fairness of the settlement is the reasonableness of the attorneys' fees. *See Helms v. Central Fla. Reg. Hosp.*, No. 6:05-cv-383-Orl-22JGG, 2006 U.S. Dist. LEXIS 92994, at *6-7, (M.D. Fla. Dec. 21, 2006); *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998). In determining the reasonableness of attorneys' fees, the lodestar is recognized as a reasonable fee. *See City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992). The lodestar is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See Helms* at 5. Courts have held, however, that it is unnecessary to inquire into the reasonableness of the hourly rate charged by plaintiff's counsel where both parties stipulate as to the reasonableness of the attorney's fees. *Id.* at 12.

Here, the parties agree the amount negotiated and agreed upon as attorney's fees and costs is reasonable based on the time spent by Plaintiffs' counsel in prosecuting and resolving the Plaintiffs' claims, the risk involved, and the total settlement value and benefit obtained by Plaintiffs. The Parties negotiated the fees separately from the Plaintiffs' settlement payment and the fees were not negotiated in relation to or as a portion of Plaintiffs' recovery. *See Bonetti v. Embarq Management Co.,* 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). Therefore, both Parties request this Court find the proposed attorneys' fees reasonable.

    **B.**    **The Parties' Interests in Keeping the Settlement Confidential Outweigh the Need for Public Access**

Courts in this jurisdiction have approved confidential FLSA settlements, including this Court,[2] because FLSA confidentiality provisions are not "per se unenforceable and violative of public policy. Rather, all but the most doctrinaire opinions on the subject acknowledge that there may be circumstances where confidentiality provisions may be appropriate and should be accepted." *Crabtree v. Volkert, Inc.,* 2013 WL 593500, at *4 (S.D. Ala. Feb.14, 2013) (approving FLSA confidential settlement); *see also Codento v. Coca-Cola Refreshments USA, Inc*, 2015 WL 404492 *3, n.3 (M.D. Fla. Jan. 29, 2015) (allowing FLSA settlement to be filed under seal and approving same notwithstanding confidentiality clause); *Valente v. Int'l Follies, Inc.*, 2017 WL 11633909, at *2 (N.D. Ga. Oct. 17, 2017) (ordering FLSA settlement to be filed permanently under seal); *Barnes v. Woodard,* 2020 WL 6273895, at *2 (M.D. Ala. Oct. 26, 2020) (allowing confidential FLSA settlement agreement to be filed under seal); *King v. Wells Fargo Home Mortg.*, 2009 WL 2370640, at *1 (M.D. Fla. July 30, 2009) (approving confidential FLSA settlement after an *in camera* review). Just as in those cases allowing confidential FLSA settlement agreements, this case is also one "where the balance tips in favor of approving the parties' settlement agreement[], notwithstanding [the] inclusion of [a] confidentiality provision[]" for the following four (4) reasons. *Crabtree,* WL 593500 at *4-5.

First, the mutual confidentiality provision, together with the mutual non-disparagement and neutral reference provisions, were important terms of the settlement agreement that both Parties negotiated, in good faith, for their own reasons and materially induced both sides into entering the

---

[2] *See, e.g., Barrett v. Republic Services of Florida Limited Partnership,* 17-62391-CIV-COHN/SELZTER, ECF 21 (April 11, 2018) (order approving confidential settlement agreement after conducting in camera review); *Calvert v. Royal Cup, Inc*., 17-60677-CIV-COHN/SELZTER, ECF 24 (July 17, 2017) (granting Joint Motion to Approve Confidential FLSA Settlement Agreement after holding an in camera review and determining settlement to be fair and reasonable).

settlement because they were bargained for and included as a means to protect *both parties equally*. *See, e.g., Barnes,* 2020 WL 6273895, at *2 (allowing confidential FLSA settlement to be filed under seal where the parties' advanced sufficient justifications for the confidentiality provision including the bargained for provisions in the agreement and the mutual desire of the parties, among others). For example, while the confidentiality provision reasonably protects Homespire's legitimate business interest in keeping the agreement private, the confidentiality provision, along with the non-disparagement and neutral reference provisions, also reasonably protects Plaintiffs' "quest to remain gainfully employed in the [mortgage] industry," as communications with industry peers about the lawsuit or settlement could potentially – and unnecessarily – jeopardize Plaintiffs' careers and future employment in the mortgage industry or elsewhere. *See Crabtree,* WL 593500 at *5, n.3 (approving confidential FLSA settlement where the confidentiality clause was not an unfair side deal only benefiting the employer alone but also benefitted the plaintiffs' ability to continue working in the industry).

Second, the settlement should remain confidential because, in addition to a bargained for confidentiality provision benefitting both parties, the settlement also contains each Plaintiffs' home address, which is confidential information that should not be made available to the public for safety reasons. *See, e.g., Valente*, 2017 WL 11633909, at *2 (granting request to permanently seal proposed FLSA settlement agreements where, among other things, the settlement agreements had strict confidentiality provisions and had the plaintiffs' and potential opt-in plaintiffs' home addresses).

Third, there was a significant dispute regarding liability in this case on the collective action counts, Counts I and II, but especially concerning Count I of the Amended Complaint. Defendant contended liability under Count I of the Amended Complaint was solely based on *one* non-binding

Sixth Circuit case that has not been adopted in this jurisdiction and, Defendant further believed that if that case were adopted, it potentially could have severe adverse consequences, leading to significant windfall damage awards to employees that would not comport with the purpose and intent of the FLSA. Defendant settled this lawsuit as a business decision and to preserve judicial economy before the Parties completed any further substantial discovery and before this Court ruled on the merits of this lawsuit, including Homespire's Motion to Dismiss and Plaintiffs' Motion for Conditional Certification. As such, the confidentiality clause was a bargained for term intended to deter the public from assuming the liability issues in this case were clear, assumed, or otherwise admitted, because Defendant contends they absolutely were not and regardless, both Parties had distinctly different theories and assessments on the issue of liability in this case. *See Barnes,* 2020 WL 6273895, at *2 (allowing confidential FLSA settlement agreement to be filed under seal where, among other things, there was a dispute regarding liability).

Fourth, both Parties in this case were represented by competent and zealous advocates, thereby eliminating any concerns of unequal bargaining power or an inequitable settlement especially since the case ultimately settled under the supervision of a third-party neutral mediator. *See Codento*, 2015 WL 404492 *3, n.3 (allowing FLSA settlement to be filed under seal and approving same notwithstanding confidentiality clause where both parties were represented by competent counsel and the public's interest will be adequately safeguarded by the disclosure on the record that an FLSA case has been settled). Accordingly, for all the reasons discussed above, the Parties respectfully request this Court review and approve the confidential settlement through an *in camera* review or at a fairness hearing.

## **CONCLUSION**

The settlement terms are fair, reasonable, and adequate and the Parties' interest in

maintaining confidentiality of the settlement outweighs the public's interest in the matter. Accordingly, the Parties respectfully request the Court review the agreements *in camera* or at a fairness hearing, grant this Joint Motion for Approval of the Settlement and enter a Final Order of Dismissal with prejudice in this action, reserving jurisdiction only to enforce the terms of the settlement.

WHEREFORE, Plaintiffs and Defendant jointly request that the Court enter an order (a) setting a fairness hearing on the settlement agreement or reviewing the agreements *in camera*; (b) approving the Parties' settlement; (c) dismissing this action with prejudice; and (d) reserving jurisdiction to enforce the terms of the settlement, should such enforcement be necessary. A proposed order is provided herewith.

Respectfully submitted on March 8, 2023.

| */s/Catherine J. MacIvor* | */s/Daniel R. Levine* |
|---|---|
| Catherine J. MacIvor, Esq. | Daniel R. Levine, Esq. |
| Fla. Bar No. 932711 | Florida Bar No. 0057861 |
| E-Mail: cmacivor@fflegal.com | E-Mail: DRL@PBL-Law.com |
| Deanna M. Santo, Esq. | Robin I. Frank, Esq. |
| Fla. Bar No. 1025686 | Florida Bar No. 0649619 |
| E-Mail: dsanto@fflegal.com | E-Mail: RIF@PBL-Law.com |
| **FOREMAN FRIEDMAN, PA** | **PADULA BENNARDO LEVINE, LLP** |
| One Biscayne Tower, Suite 2200 | 3837 NW Boca Raton Blvd. |
| 2 South Biscayne Boulevard | Suite 200 |
| Miami, FL 33131 | Boca Raton, FL 33431 |
| Tel: 305-358-6555/ Fax: 305-374-9077 | Telephone: (561) 544-8900 |
| *Counsel for Homespire* | *Counsel for Plaintiffs* |